UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re JAMES THIGPEN,<br><br>               Debtor. | Chapter 13 |
| JAMES THIGPEN,<br><br>               Appellant,<br><br>          vs.<br><br>UNITED STATES OF AMERICA,<br><br>               Appellee. | 17 C 7222<br><br>Judge Gary Feinerman<br><br>Appeal from: No. 17 B 10161 |

**MEMORANDUM OPINION AND ORDER**

James Thigpen appeals the bankruptcy court's orders granting the Government's motion to amend its judgment and denying his motion to enforce the automatic stay. Docs. 1, 1-3, 1-4. The bankruptcy court's ruling is vacated and the case is remanded for consideration of the Government's motion for relief from the automatic stay.

**Background**

The pertinent facts are undisputed. In May 2009, Thigpen pleaded guilty to violating 18 U.S.C. § 641 by fraudulently obtaining Supplemental Security Income ("SSI") benefits, which are intended to provide income security to qualifying persons with disabilities. Doc. 6-2 at 99-108; *see United States v. Thigpen*, No. 06 CR 779 (Manning, J.). The district court sentenced him to two years' probation and ordered him to pay $49,327.17 in restitution to the Social Security Administration ("SSA") "in increments of 10% of [his] net, monthly income." Doc. 6-2 at 117-122. Each month for almost eight years, Thigpen paid SSA approximately ten percent of

1

his monthly Social Security Old-Age, Survivors, and Disability Insurance ("OASDI") benefits, his only source of income during that time. Doc. 8 at 7-8; *see* Doc. 6-2 at 32, 36-37.

In March 2017, SSA began withholding 100 percent of Thigpen's OASDI benefits. Doc. 6-2 at 183; Doc. 8 at 6; Doc. 10 at 7. Thigpen quickly filed for Chapter 13 bankruptcy. Doc. 6-2 at 7-72. Citing the equitable recoupment doctrine, the Government moved the bankruptcy court to confirm that the automatic stay, *see* 11 U.S.C. § 362(c)(3)(A), did not apply to its withholding of Thigpen's OASDI benefits or, alternatively, for relief from the automatic stay. Doc. 6-2 at 78-122. While the motion was pending, the bankruptcy court confirmed a Chapter 13 plan providing that Thigpen would pay SSA $100 per month, just over 10% of the total benefit, in restitution. *Id*. at 2-4, 141, 172; Doc. 8 at 6.

The bankruptcy court denied the Government's motion regarding the automatic stay. Doc. 6-2 at 183; Doc. 6-3 at 1-3. The bankruptcy court reasoned, in pertinent part, that the district court's criminal restitution order mandating payment "in increments of 10% of defendant's net, monthly income" was res judicata and precluded the bankruptcy court from authorizing SSA to withhold 100 percent of Thigpen's benefits. The Government moved to amend the bankruptcy court's judgment, Doc. 6-3 at 5-25, and Thigpen cross-moved for an order compelling SSA to pay the OASDI benefits that SSA was continuing to withhold, *id*. at 27-29. The bankruptcy court granted the Government's motion, denied Thigpen's motion, and vacated its prior order. Docs. 1-3, 1-4. Citing *In re Wernick*, 2016 WL 7212508 (N.D. Ill. 2016), the bankruptcy court held that SSA's withholding of Thigpen's OASDI benefits constituted recoupment and thus was not subject to the automatic stay, and also that the criminal restitution order was not res judicata. *Ibid*. Thigpen timely appealed. Doc. 1.

**Discussion**

Thigpen offers several challenges to the bankruptcy court's order, but it is necessary to consider only one—that SSA's withholding of Thigpen's OASDI benefits is not recoupment and thus does not fall outside the scope of the automatic stay. As the Government agreed at the argument on this appeal, Doc. 13, if the recoupment doctrine does not apply, then SSA's withholding of Thigpen's OASDI benefits is subject to the automatic stay. This court reviews de novo the bankruptcy court's decision on the recoupment issue. *See In re Terry*, 687 F.3d 961, 963 (8th Cir. 2012); *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 3 (1st Cir. 2004); *Matter of Kosadnar*, 157 F.3d 1011, 1013 (5th Cir. 1998).

Filing a bankruptcy petition "operates as a stay, applicable to all entities, of … any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case … ." 11 U.S.C. § 362(a)(6). "[T]he setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor" is also stayed. *Id.* § 362(a)(7); *see Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 20 (1995) (recognizing that 11 U.S.C. § 362 imposes a "restriction upon when an actual setoff may be effected—which is to say, not during the automatic stay"); *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079-80 (3d Cir. 1992). Property subject to the recoupment doctrine, by contrast, is exempt from the automatic stay. *See In re Malinowski*, 156 F.3d 131, 133 (2d Cir. 1998) ("The distinction between set-off and recoupment is crucial because set-off claims are subject to the automatic stay of 11 U.S.C. § 362 … ."); *In re McMahon*, 129 F.3d 93, 96 (2d Cir. 1997) ("While a 'setoff' is subject to the automatic stay provision of 11 U.S.C. § 362, a recoupment is not."); *United States v. Consumer Health Servs. of Am., Inc.*, 108 F.3d 390, 395 (D.C. Cir. 1997) (noting that the recoupment doctrine "exempts a debt from the automatic stay when the debt is

inextricably tied up in the post-petition claim"); *Matter of U.S. Abatement Corp.*, 79 F.3d 393, 398 (5th Cir. 1996); *In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990).

The dispositive question here is whether SSA's withholding of Thigpen's OASDI benefits to cover the debt he owes from SSA's prior overpayment of SSI benefits qualifies as a recoupment or merely a setoff. The difference between the two doctrines is this: Recoupment applies only if the debtor's and the party's mutual obligations arise out of the "same transaction," *N. Tr. Co. v. Peters*, 69 F.3d 123, 135 (7th Cir. 1995); *see also Consumer Health*, 108 F.3d at 395 (noting that the recoupment doctrine "exempts a debt from the automatic stay when the debt is inextricably tied up in the post-petition claim"), while setoff applies if the obligations arise from different transactions, *see Univ. Med. Ctr.*, 973 F.2d at 1079-80. Whether the mutual obligations here—Thigpen's pre-petition obligation to repay his ill-gotten SSI benefits to SSA, and SSA's ongoing post-petition obligation to pay Thigpen OASDI benefits—arise out of the same transaction turns on the governing statutes and regulations. *See Consumer Health*, 108 F.3d at 395 (in a case concerning the withholding of Medicare payments to the debtor Medicare provider, noting that "[i]n determining whether the pre-petition and post-petition services should be thought of as one transaction, the key to us is the Medicare statute"); *see also Holyoke Nursing Home*, 372 F.3d at 4; *In re TLC Hospitals.*, 224 F.3d 1008, 1013 (9th Cir. 2000). After all, as the Seventh Circuit explained in a different context: "Property interests … are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Hussey v. Milwaukee Cnty.*, 740 F.3d 1139, 1142-43 (7th Cir. 2014) (internal quotation marks omitted).

4

The D.C. Circuit's opinion in *Consumer Health*, which considered whether the recoupment doctrine applied to the government's withholding payment for post-petition Medicare services to recover pre-petition overpayments to the debtor provider, illustrates how the analysis should be conducted. 108 F.3d at 394-96. The D.C. Circuit began by noting that the statute defining the debtor's entitlement to payment instructed the Secretary of Health and Human Services to determine how much providers "shall be paid" for services, "with necessary adjustments on account of previously made overpayments or underpayments." *Id*. at 394 (quoting 42 U.S.C. § 1395g(a)). The court held that the Secretary's withholding payment for post-petition services was a recoupment, reasoning: "Since [the Medicare statute] requires the Secretary to take into account pre-petition overpayments in order to calculate a post-petition claim … Congress rather clearly indicated that it wanted a provider's stream of services to be considered one transaction for purposes of any claim the government would have against the provider." *Id*. at 395; *see also Holyoke Nursing Home*, 372 F.3d at 4 (adopting the D.C. Circuit's reasoning and result); *TLC Hospitals*, 224 F.3d at 1013 (same).

The bankruptcy court relied exclusively on *Wernick* in holding that the recoupment doctrine covered SSA's withholding of Thigpen's post-petition OASDI benefits to recover the pre-petition debt he owes SSA for his fraudulent receipt of SSI benefits. Docs 1-3, 1-4. *Wernick* considered whether the recoupment doctrine covered SSA's post-petition withholding of OASDI benefits to compensate for the debtor's pre-petition fraudulent receipt of OASDI benefits. 2016 WL 7212508, at *1. The district court observed that the statute authorizing SSA to withhold such benefits, 42 U.S.C. § 404, helped to define the debtor's entitlement to those benefits. *Id*. at *4. The court also noted that, in cases where the earlier benefits were obtained fraudulently, § 404 and its implementing regulations require SSA to withhold ongoing benefits rather than

leaving the decision to the agency's discretion. *Id*. at *3; *see* 42 U.S.C. § 404(a)(1)(A) (requiring SSA to reduce benefits to account for prior overpayments); *id.* § 404(b) (permitting SSA to relax the requirement where the overpayment was without fault, but not when the overpayment was with fault); 20 C.F.R. § 404.502(a)(1) (requiring SSA to reduce benefits to account for overpayments); *id*. § 404.502(c)(2) (eliminating the discretion to withhold a lesser amount "if the overpayment was caused by the individual's intentional false statement or representation, or willful concealment of, or deliberate failure to furnish, material information"). Given this statutory and regulatory backdrop, the court held that SSA's withholding ongoing OASDI benefits to account for prior fraudulent OASDI payments was part and parcel of the debtor's entitlement to ongoing OASDI benefits, and therefore that the debtor's debt to SSA for the prior OASDI overpayments and SSA's ongoing obligation to pay OASDI benefits were "elements of one unified transaction subject to recoupment." *Id*. at *4.

There is a key distinction between *Wernick* and this case: In both cases, SSA withheld OASDI benefits from the debtor, but in *Wernick*, the debtor owed SSA for prior *OASDI* overpayments, while here, Thigpen owes SSA for prior *SSI* overpayments. That distinction makes a difference, for § 404 and its implementing regulations—the provisions upon which *Wernick* relied—authorize SSA to withhold OASDI payments to compensate *only* for overpayments made "under this subchapter," that is, Title 42, Chapter 7, Subchapter II of the United States Code, or Title II of the Social Security Act, which concerns OASDI benefits. 42 U.S.C. § 404(a)(1); *see also* 20 C.F.R. § 404.501 (providing that the term "overpayment" in 20 C.F.R. §§ 404.501-545 describes only overpayments under Title II or specific sections of Title II); *cf. Dotson v. Shalala*, 1 F.3d 571, 574 (7th Cir. 1993) ("Title II of the [Social Security] Act governs the payment of Old-Age, Survivors, and Disability Insurance ('OASDI') benefits to

disabled persons who have contributed to the Social Security program. 42 U.S.C. § 401 *et seq.*"). Here, by contrast, Thigpen received overpayments under the SSI program, which is governed by Title XVI of the Social Security Act (Title 42, Chapter 7, Subchapter XVI of the United States Code), not Title II. *See* 42 U.S.C. § 1381 *et seq.*; *Heckler v. Day*, 467 U.S. 104, 106 (1984) ("Disability benefits … are payable under the Supplemental Security Income (SSI) program established by Title XVI of the Act, 76 Stat. 197, as amended, 42 U.S.C. § 1381."). It follows that § 404 and its implementing regulations do not authorize SSA to withhold Thigpen's OASDI benefits, and therefore that they do not speak to whether SSA's withholding is a recoupment or merely a setoff.

SSA's authority to withhold Thigpen's OASDI benefits arises from 42 U.S.C. § 1320b-17, entitled "Cross-program recovery of overpayments from benefits." Section 1320b-17(a) states:

> [W]henever the Commissioner of Social Security determines that more than the correct amount of any payment has been made to a person under a program described in subsection (e) of this section [including SSI benefits, *id.* § 1320b-17(e)(3)], the Commissioner of Social Security *may* recover the amount incorrectly paid by decreasing any amount which is payable to such person under any other program specified in that subsection [including OASDI, *id.* § 1320b-17(e)(1)].

*Id.* § 1320b-17(a) (emphasis added). Section 1320b-17(b)(1) limits the amount that SSA may withhold under § 1320b-17(a) in cases where the overpayment recipient was not at fault. *Id.* § 1320b-17(b)(1) ("In carrying out subsection (a) of this section, the Commissioner of Social Security may not decrease the monthly amount payable to an individual under a program described in subsection (e) of this section [by more than a set amount, which varies depending on the program]."). Section 1320b-17(b)(2) permits, but does not require, SSA to disregard those limits in cases where the recipient received the overpayment as a result of fraud. *Id.* § 1320b-17(b)(2)(A) ("[Section 1320b-17(b)(1)] shall not apply if … the person or the spouse of

the person was involved in willful misrepresentation or concealment of material information in connection with the amount incorrectly paid."). Section 1320b-17's implementing regulation, entitled "How much will we withhold from your title II and title VIII benefits to recover a title XVI overpayment?", states that SSA will "collect the overpayment by withholding the lesser of the overpayment balance or the entire amount of title II benefits and title VIII benefits payable to you," and warns that SSA "will not collect at a lesser rate." 20 C.F.R. § 416.573(d).

Section 1320b-17 differs from the overpayment recovery statutes at issue in *Consumer Health* and *Wernick*. One significant difference is that § 1320b-17 allows for cross-program cost recovery—permitting SSA to withhold OASDI payments to recover prior SSI overpayments—while the statutes in *Consumer Health* and *Wernick* allowed withholding only where the prior and ongoing payments were made pursuant to the same program. *See Consumer Health*, 108 F.3d at 394; *Wernick*, 2016 WL 7212508, at *2. In this respect, the Government's position in *Consumer Health* and *Wernick* mirrored the quintessential recoupment defense: In contracts cases, creditors are most successful in asserting a recoupment defense where the creditor's obligations to the debtor and the debtor's obligations to the creditor arise from the same contract. *See, e.g., N. Tr. Co.*, 69 F.3d at 135 ("[Recoupment] involves the right of the defendant to have the plaintiff's monetary claim reduced by virtue of a claim by the defendant against the plaintiff arising out of the same contract."); *Kosadnar*, 157 F.3d at 1015 ("When all claims arise out of one contract between the parties, application of the recoupment doctrine is appropriate."); *McMahon*, 129 F.3d at 96 ("Often, recoupment seeks to avoid the unjust result that would occur if a debtor who has been overpaid pre-petition by a party in a contract is permitted post-petition to make a claim under the contract against that party without regard to the overpayment it has received."); *U.S. Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 623 (8th Cir. 1994)

("Prior recoupment cases have allowed bankruptcy creditors to offset pre-petition overpayments against a debtor's claim for post-petition work under the same contracts … ."); *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1986) ("A typical case applying the recoupment doctrine in bankruptcy permitted a claim for damages for alleged breach of a construction contract to reduce the balance due under the contract.") (collecting other typical cases).

The parties' respective obligations in this case do not arise under the same program or statute. The distinction between the Social Security statutes here and in *Wernick* are subtle, as SSA administers both the SSI and OASDI programs. But the programs are separately funded, have different eligibility criteria, and serve different populations. *See Johnson v. Heckler*, 769 F.2d 1202, 1209 (7th Cir. 1985) ("The SSI program grew out of state-administered programs and is not an offshoot of OASDI … ."), *vacated on other grounds sub nom. Bowen v. Johnson*, 482 U.S. 922 (1987); *Reed v. Heckler*, 756 F.2d 779, 781 n.1 (10th Cir. 1985) ("The [OASDI] program is . . . administered by the SSA, but is totally separate from SSI, and operates pursuant to different statutory authority and with separate funding."). Specifically, payroll taxes finance the OASDI program, *see* 42 U.S.C. § 401; *Dotson v. Shalala*, 1 F.3d 571, 574 (7th Cir. 1993) ("Title II of the [Social Security Act] governs the payment of [OASDI] benefits to disabled persons who have contributed to the Social Security program."); *Bubble Room, Inc. v. United States*, 159 F.3d 553, 554-55 (Fed. Cir. 1998), while Congress appropriates funds from general revenue for the SSI program, *see* 42 U.S.C. § 1381; *Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999) ("[SSI] is a social welfare program funded out of general taxpayer revenues."). To qualify for OASDI benefits, a claimant must pay Social Security taxes for a certain number of quarters and be either disabled or at least 62 years old, *see* 42 U.S.C. §§ 402, 416(i); *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010), while SSI benefits are available to indigent persons who have a

9

disability or are age 65 or older regardless of whether they have paid Social Security taxes, *see* 42 U.S.C. §§ 1382, 1382c(a)(1)(A); *Dotson*, 1 F.3d at 574; *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980) ("Essentially, the Title XVI [SSI] provisions of the Social Security Act … were designed to provide benefits for persons not covered under the Title II social security benefits."). The circumstances here, then, are more analogous to cases where the parties' obligations arise out of different contracts, circumstances that typically do not give rise to a recoupment defense. *See Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 263 (3d Cir. 2000) ("To the extent the amount being claimed by [the plaintiff] and the amount of reduction sought by [the defendant] arise from the *same contract*, [the defendant's] defense will be one of recoupment. However, to the extent the amount being claimed by [the plaintiff] and the amount of reduction sought by [the defendant] arise from *different contracts*, [the defendant's] defense will be one of setoff."); *In re Anes*, 195 F.3d 177, 182-83 (3d Cir. 1999) (holding that a creditor could not raise a recoupment defense where "[the plaintiff's] debt arises from the loan she obtained from the Retirement System, whereas the [creditor's] obligation to pay her salary arises from her contract of employment and performance of her job"); *In re Davidovich*, 901 F.2d 1533, 1538 (10th Cir. 1990) (holding that a creditor could not recoup debts arising out of a separate contract from the contract giving rise to the creditor's obligations to the debtor, and noting that "courts have generally only found this 'same transaction' requirement to be satisfied when the debts to be offset arise out of a single, integrated contract or similar transaction").

Another significant difference concerns how the relevant statutes define and measure the recipient's entitlement to payment. The statutes in *Consumer Health* and *Wernick* measure such payment with explicit reference to the agency's ability to seek recovery for past overpayments.

10

*See* 42 U.S.C.A. § 1395g(a) ("[T]he provider of services shall be paid … the amounts so determined, with necessary adjustments on account of previously made overpayments or underpayments … ."); 42 U.S.C. § 404(a) (providing for adjustment of OASDI benefits to account for prior overpayment as part of a series of consecutive provisions that, together, describe the process for calculating benefits, *id.* §§ 402-405). *Consumer Health* and *Wernick* cite that very feature in holding that the debtor's pre-petition debt and the agency's post-petition payment obligation arose from the same transaction. *See Consumer Health*, 108 F.3d at 395 ("Since [the Medicare statute] requires the Secretary to take into account pre-petition overpayments in order to calculate a post-petition claim … Congress rather clearly indicated that it wanted a provider's stream of services to be considered one transaction … ."); *Wernick*, 2016 WL 7212508, at *4 ("[T]he adjustment of social security benefits to recover prior overpayments constitutes an integral part of the statutory process for calculating the social security benefits owed to an individual."). Here, by contrast, the statutes that entitle Thigpen to OASDI benefits, *see* 42 U.S.C. §§ 402-405, do not allow SSA to withhold Thigpen's OASDI benefits to recover the past SSI overpayments; a different statute does that, *see id.* § 1320b-17.

Yet another significant difference concerns the relevant agency's discretion, or lack thereof, to withhold current benefits to recover past overpayments. The withholding provisions in *Consumer Health* and *Wernick* were mandatory, a feature that both courts cited in holding that the recipient's pre-petition debt to the agency was part of the same transaction as the agency's post-petition obligation to the recipient. *See Consumer Health*, 108 F.3d at 395 ("Since [the Medicare statute] *requires* the Secretary to take into account pre-petition overpayments in order to calculate a post-petition claim … Congress rather clearly indicated that it wanted a provider's stream of services to be considered one transaction … .") (emphasis added); *Wernick*, 2016 WL

11

7212508, at *3 ("[T]he statute expressly provides for the withholding of benefits to recoup prior overpayments … [and while] [t]he statute … provides [SSA] with discretion to suspend the recovery of overpayments that did not result from fault … [t]he statue contains no similar exception for overpayments resulting from fault."). The Government itself stressed the importance of this feature in this case. Doc. 10 at 8 (arguing that § 404 "*conditions* the right to benefits on the beneficiary's repayment of *all* fraud overpayments … [thereby] link[ing] the benefits and overpayment closely enough to count as recoupment") (first emphasis added); *ibid.* ("*[S]tatutorily mandated* benefits withholding is recoupment … .") (emphases added); *id.* at 10 ("Where a *statutory* scheme *mandates* benefits withholding to recover overpayments, that is recoupment according to a plurality of federal circuit courts.") (emphases added); *id.* at 11 ("SSA's benefits withholding is recoupment for the same reason the First, Ninth, and D.C. Circuits concluded Medicare overpayment recovery is recoupment[:] a *statutory* mandate *requires* it.") (emphases added); *id.* at 12 ("Recoupment to recover fraud overpayments is more than consistent with the Act, which *mandates* 100% withholding in fraud cases"). Section 1320b-17, by contrast, allows but does not require SSA to withhold current benefits under one Social Security program to recover past overpayments under another Social Security program, even where, as here, the overpayment arose from the recipient's fraud. *See* 42 U.S.C. § 1320b-17(a) ("[W]henever the Commissioner of Social Security determines that more than the correct amount of any payment has been made to a person under a program described in subsection (e) of this section, the Commissioner of Social Security *may* recover the amount incorrectly paid by decreasing any amount which is payable to such person under any other program specified in that subsection.") (emphasis added); *id*. § 1320b-17(b)(2)(A) (providing

that the § 1320b-17(b)(1) limits on how much SSA may collect do not govern fraud cases, but not requiring SSA to collect the maximum amount).

In sum, the circumstances that led *Consumer Health* and *Wernick* to hold that the agency's ongoing obligation to pay benefits and the debtor's obligations to repay past overpayments were part of a single transaction, and thus that the recoupment doctrine applied, are not present here. An examination of the governing statutes reveals that the nexus between SSA's ongoing obligation to pay OASDI benefits to Thigpen, on the one hand, and Thigpen's obligation to repay the SSI overpayments to SSA, on the other hand, is too loose to satisfy the same transaction test. *See McMahon*, 129 F.3d at 97 ("In light of the Bankruptcy Code's strong policy favoring equal treatment of creditors and bankruptcy court supervision over even secured creditors, the recoupment doctrine is a limited one and should be narrowly construed."); *In re Peterson Distrib., Inc.*, 82 F.3d 956, 959 (10th Cir. 1996) ("Recoupment is narrowly construed in bankruptcy cases because it violates the basic bankruptcy principle of equal distribution to creditors."); *Univ. Med. Ctr.*, 973 F.2d at 1081 ("[A] non-statutory, equitable exception to the automatic stay [like recoupment], should be narrowly construed."). It follows that SSA's withholding of Thigpen's OASDI benefits to recover its prior SSI overpayments is a setoff, not a recoupment, and therefore that SSA's withholding is not exempt from the automatic stay.

In pressing the opposite result, the Government argues that § 1320b-17's implementing regulation—which provides that SSA "will collect" the maximum benefits allowed under § 1320b-17(a), 20 C.F.R. § 416.573(d)—establishes the requisite connection between SSA's and Thigpen's respective obligations. Doc. 10 at 11. As SSA explained, the regulation "reflect[s] [SSA's] … authority" to collect overpayments and adopts a policy of collecting to the full extent of the law. *Expanded Authority for Cross-Program Recovery of Benefit Overpayments*, 70 Fed.

Reg. 16111-01, 16111 to 12 (Mar. 30, 2005). Contrary to the Government's submission in this case, SSA's policy to fully utilize its statutory authority to collect prior overpayments does not speak, one way or the other, to whether its ongoing payment obligation to Thigpen under the OASDI program is part of the same transaction as Thigpen's obligation to repay the prior SSI overpayments. And even if the regulation provided some slight support for the Government's position, it would not weigh heavily enough to tip the scales in favor of recoupment given the many features, described above, that point strongly in the opposite direction.

The result reached here holds under either of the two tests that have emerged to implement the "same transaction" test in the bankruptcy context. The Second, Third, Eighth, and Tenth Circuits hold that the agency's and debtor's mutual obligations satisfy the "same transaction" test only if they arise from a "single integrated transaction." *Terry*, 687 F.3d at 963; *see also In re Beaumont*, 586 F.3d 776, 781 (10th Cir. 2009); *Malinowski*, 156 F.3d at 133; *Univ. Med. Ctr.*, 973 F.2d at 1082. For the reasons given above, it cannot be said that Thigpen's and SSA's mutual obligations arise from a single integrated transaction.

The Ninth Circuit implements the "same transaction" test by asking whether the agency's and the debtor's obligations have a "logical relationship" to one another. *See TLC Hospitals.*, 224 F.3d at 1012. The Ninth Circuit has warned that the "logical relationship" analysis "is not to be applied so loosely that multiple occurrences in any continuous commercial relationship would constitute one transaction." *Ibid*. Consistent with this admonition, lower courts applying the analysis examine whether the creditor's claim "arises from the same aggregate set of operative facts as" the debtor's claim. *In re Madigan*, 270 B.R. 749, 755 (B.A.P. 9th Cir. 2001). Here, SSA's pre-petition claim against Thigpen and Thigpen's post-petition claim against SSA, while arising from a continuous relationship between the parties, involve materially different operative

14

facts: Thigpen owes SSA for overpaid benefits because he falsely claimed to have met the eligibility criteria for the SSI program, while SSA owes Thigpen retirement benefits because he paid taxes into a separate program throughout his working life and now meets the eligibility criteria for that program. Accordingly, even under the Ninth Circuit's more forgiving approach to the "same transaction" test, Thigpen's and SSA's mutual obligations do not arise from the same aggregate set of operative facts. *See id.* at 759 (holding that there was no "logical relationship" between claims on an insurance policy for two separate periods of disability, where the claims were "administered separately" and were "memorialized in separate contractual agreements"); *cf. In re Azevedo*, 497 B.R. 590, 600 (Bankr. D. Idaho 2013) (holding that the logical relationship test was satisfied where the case involved "but a single agreement that contemplated several future milk deliveries, and several deductions from milk payments").

All this does not leave SSA without a remedy. Thigpen concedes that his debt to SSA is nondischargable, Doc. 8 at 9, and he has agreed as part of his confirmed plan to pay SSA $100 per month in restitution while the automatic stay remains in place, Doc. 6-2 at 4, 141, 172. Moreover, the bankruptcy court ultimately did not rule on the Government's motion for relief from the automatic stay. Doc. 1-4. The Government thus argues, and Thigpen does not dispute, that if the bankruptcy court's recoupment holding is vacated, a remand is appropriate to allow that court to consider the motion for relief from the automatic stay. Doc. 10 at 20.

## Conclusion

For the foregoing reasons, SSA may not withhold Thigpen's OASDI benefits under the equitable recoupment doctrine while the automatic stay is in place. The bankruptcy court's orders granting the Government's motion to amend and denying Thigpen's motion to enforce

accordingly are vacated, and the case is remanded to the bankruptcy court for consideration of the Government's motion for relief from the automatic stay.


September 30, 2018                              /s/ Gary Feinerman
                                            United States District Judge